Good afternoon, ladies and gentlemen. This is Judge Easterbrook speaking. Judge St. Eve and I are in the courtroom in Chicago. Judge Hamilton is participating by phone, and of course all the lawyers are participating by phone. So that has a potential for problems because it may be difficult for somebody who's speaking to know when somebody else has started to speak. I will see if it's necessary to interrupt and get things back on track, but with a little bit of patience, I'm sure we can make this process work. So our case for argument this afternoon is Molson Coors v. Anheuser-Busch. Mr. Bennett. Thank you, and may it please the court. This appeal argument relates to the final paragraph of the October 23 injunction, which preliminarily enjoined Anheuser-Busch's packaging, which states no corn syrup and which has an icon with a slash through it to the same effect. The district court found that it was literally true, but enjoined it, and we believe that ruling should be reversed for three reasons. The first being that the district court erred in finding that the packaging, which makes no comparative claim and which is true, was potentially misleading. The second reason is that Miller Coors offered no evidence of consumer deception of a substantial segment, which is required for an impliedly false claim. And the third is that there was no evidence of irreparable harm and that in light of eBay and, in addition, this court's holding in Fava Works extending eBay, it was erred to presume that. Taking those in order, we believe that under Meade-Johnson and First Health, it was erred to say that our packaging could be considered misleading. In contrast to many cases, including those relied upon by the district court, our packaging makes no comparative claim and the district court noted that in the initial May order. They don't refer to Miller Coors' product and they don't also refer generically to other beers and they don't say less than or compared to others. We believe that under those circumstances, Miller Coors has failed to show a likelihood of success on the first element of a material false statement. The packaging is true and also unambiguous, talking what's about inside the packaging. Mr. Bennett, this is Judge St. Eve. The district court looked beyond the packaging here and looked instead at the broader advertising campaign. Is it your argument that that was incorrect for the court to do, that the court should have just focused on the packaging? And if so, how does that square with Eli Lilly? We think that we would prevail on both of those of each advertisement and not, as we say in some of our cases, mix and match elements from others. But where you do have an impliedly false claim and there is not an actual, literal falsehood as well, that you can't just assume the campaign. When you look at multiple ads, there's a requirement that there would be evidence that some consumer saw the multiple ads, that these multiple ads caused consumers who saw packaging to think of Miller Coors, that they took away from the package the in the beer message. And there is no evidence of that and no evidence that a consumer understood the packaging to be making this impliedly false comparative claim. And so we think that that is consistent with that. And if you look at Eli Lilly versus Arla, an important statement there is that the injury and the deception must occur as a result of the false statement that's alleged. And when you look at this campaign as it's described, obviously the cornerstone or the largest portion of it was the Super Bowl ad called Special Delivery, which the district court found to be truthful and not misleading. And therefore, even if you did look at the overall campaign under the Eli Lilly framework, the difference is there's no misleading campaign statement that somehow makes something that's true false as well. So we have a unique situation here where the district court used a true, not misleading statement that Miller Coors' products are brewed with corn syrup to suggest or conclude that a consumer might take away from the packaging that these were in as opposed to brewed with. And so we think that our position is consistent with Arla Foods. And in fact, Arla Foods, you know, of course, says that you don't have to have a survey to show evidence of consumer deception because of the early stage of the preliminary injunction. Here, Miller, of course, did do a survey, but they chose to do it only of a commercial. We did do a survey, so there was time to do it. And there, the evidence that the court had in Arla Foods of deception involved an FDA study where they had looked at this precise issue and found that consumers would misunderstand it without context. Found that the ad in Eli Lilly was directly comparative and disparaging. I know the court's aware that it included monster imagery and razor fangs and things like no weird stuff in a directly comparative situation. And they had evidence in Arla Foods of a large cheese producer who the court noted would understand how consumers were looking at this actually stopped doing business. And so we think we're entirely different from Arla Foods on each one of those points and that when you look at the type of evidence that was is present here. And when you get to our packaging being true and unambiguous and concluding that you can't just say there's a commercial out there that we're going to interpret this on because that commercial was found to be true and not misleading as well, I think you run into the line of cases that we cite that say two different things. The first is a series of cases that say you cannot extrapolate from a finding on one ad to others. And those cases are the Fifth Circuit's Papa John case where the court of appeals said well yes Papa John's better ingredients better pizza may have been misleading as to sauce and dough but there's no evidence it is as to a hundred other types of places it was used. Or J&J Vision where the Eleventh Circuit had a great line that I think is insightful for this where it says yes you can look at context but you can't quote assume context close quote. And there they had three different letters or written publications that were alleged to be deceptive and the court said you can't just assume consumers look at each one of these and reach conclusions based on them there has to be actual evidence. And then the Stokely Van Camp case from the quite on point that was a liquid case a drink case where Gatorade said Powerade was deceptive because they said Powerade was complete and they had previously done ads where they said Gatorade is not complete. And even under those circumstances where the district court said the not complete competitive claim against Gatorade was misleading or not accurate the court declined to enjoy non-comparative statements on the packaging or the advertising that said Powerade was complete. And so whether in looking at context you can ever look at other types of advertising or look at it together I think what you run into is the Rice-like case the Abbott case from this court where they found that the Rice-like name was misleading because it was tied to other statements where it said it's Rice-based. So when you looked at the package in Abbott you had Rice-like the name you had on the package itself a claim about Rice then in each one of the parts of the campaign they would have both the name and then both a false Rice claim. And so there this court looked at looked at multiple types of advertising but found in each one of them that they had the lack of evidence that was presented to the district court you would see that one of the things that happened here was a tactical decision we would submit because no survey could have shown that consumers would have taken away the message that Miller Coors wanted to take away from our packaging. But you only have a survey on one Super Bowl commercial presented to the district court and they did another one later we acknowledged but it was a TV commercial. And those commercials were found to be not misleading but council critically for the pet council. This is Judge Easterbrook. You mentioned the Super Bowl commercial and of course the Super Bowl that Super Bowl was a good long time ago. Is Anheuser-Busch still using that campaign and the packaging? We are using the packaging compliant with the preliminary injunction your packaging says no preservatives no artificial flavors and we use our ingredients but we struck the packaging. So we're not doing that and we're not running the TV commercials. The TV commercials are not running. Do you want to go back to the enjoined packaging? I haven't talked to the to the enjoined packaging. I believe we would like to say no corn syrup on the enjoined packaging. Yes where I hope you can see the blank. I hope you can see why I'm asking this. The parties haven't discussed this but I'm worried that this lawsuit may be moot at least with respect to the request for injunctive relief as opposed to a request for damages. I understand where you're going with that on the issue of whether the ads are currently running and of course with regard to the packaging we're not on that and I am not aware of any of the Super Bowl commercials running and I certainly think we would all have seen them if they were. So we do a very good point maybe on the Michael Jordan the only sports we can watch. So yes your honor Judge Easterbrook I do understand a mootness issue on the request for injunctive relief. By the way if you really want the NFL is broadcast is has made available for free all of the old Super Bowls so you can watch the Green Bay Packers win or the Buffalo Bills lose the Super Bowl as often as you want. I think if we advertise on those Judge Easterbrook we might go with the Frogs or some different commercials that worked a little better in the marketplace. So yes we are not currently running this packaging in this in this manner. On the issue that is raised by Judge St. Eve I think also this heavy reliance on Time Warner Cable the Time Warner was not an implied falsity case and so it explicitly stated it was excusing any evidence of confusion to show implied falsity so that's an important difference. It also involved a literal false claim regarding high definition versus cable and so it was expressly comparative to cable and they made a generic reference there to quote unquote cable which is literally only was running and so we don't have any of that with our packaging here and we don't think that Time Warner would apply in casserole which is another case that Miller Coors relies on is to the same effect. It was a literally false ad about viscosity and motor oil and they made an express comparison to quote other leading brands. I'm turning now to the presumption of irreparable harm. Arla Eli Lilly or Arla depending on how we like to refer to it does require a proof of irreparable harm before final resolution and that requirement as the Supreme Court pointed out in Winter and then this court pointed out in Schwinn is important because this is a far reaching power to issue these injunctions and the evidence must clearly Mr. Bennett this is Hamilton. Can I ask you I guess I'm I followed what seemed to me fairly abstract arguments about the effects of eBay and Winter here but let me ask you to consider the following hypothetical that somebody introduces a new low calorie low taste beer called Bud Light spelled B U D D L I T E puts it on the market. Your client goes in to seek an injunction based on trademark infringement likelihood of confusion and you convince the court that this is material and misleading and it's confusing to consumers. What else should you have to prove in practical terms to get an injunction to to support a finding of likely irreparable harm. Well I think that there is cases that talk about how in that context somewhat of a palming off type context. One of the things you can show is a decline in brand health or that when a consumer looks at those two they associate one with the other and that because this is low taste or however whatever negative aspect of it was that made them feel less good about our product. Okay so you but you prove the plaintiff proves it's misleading. Do you have to prove reduced sales. Do you have what else does it take. We have this long history of at least permitting the inference of irreparable harm may not be mandatory. And I realize that there may be some things the defendant could could do to defeat that that that inference. But why would you not permit that inference and what would it take to to support it if you needed more than just the inference. I think that this court does also have a B Fanfield case which talks about the need to actually prove some economic harm. If you can't prove any lost sales and you're at the provide some nice guidance to what you can show which is a reputational injury flowing directly from the deception associated with it. And they talk about it. Injury in that in that format. What do you need more than evidence of deception or people getting the wrong impression about the products. I think you would. As I as I understand it that's the way we have permitted the use of the inference of irreparable harm from deception and confusion. Well in the false I would suggest that that in the false advertising context you would probably have to go back to Abbott versus me Johnson to look at the presumption and what they talk there about is the need that the presumption applies Mr. Bennett. Comparative Mr. Bennett you Mr. Bennett you have three and a half minutes left you're in your rebuttal time. Just keep that in mind. Thank you very much Judge Easterbrook. So three points on that Judge Hamilton quickly on it is first off even before eBay if the case is required it to be directly comparative before they would apply the presumption. Secondly this court looked at this issue very close in Flava Works and applied eBay thereafter even including the same authoring judges who had written Promethek. And third there's any number of ways to prove economic harm other than lost sales which the case law recognizes to be in Lexmark in the Supreme Court. I'd like to reserve my time if there's no further questions at this stage. Certainly Mr. Bennett. Mr. Schott. Thank you your honors. I'd like to start on the comparative issue which is where Mr. Bennett started and emphasize this was a factual finding by Judge Conley. He made a factual finding that the package was comparative. So that finding needs to be reviewed on a clear error standard and the basis for his factual finding was that the market we're talking about here the market for premium light beers is essentially a binary or trinary market. Our products Miller Light and Coors Light and Bud Light comprise about 100 percent of that category. And so that was influential in Judge Conley's determination that this is a comparative advertisement. Next he looked at the importance of knowing what is in your beer and how Anheuser-Busch was going to put labels on its beer so people would know what it is in its beer and encouraging others to put labels on their beer so consumers would know what is in their beer. Then they ran the Super Bowl commercials that said they use corn syrup and then they followed that up with a series of commercials that say there is no corn syrup in our beer. And the penultimate comparative is we have a photograph of it on page 24 of our brief where they have the Bud Light King holding the package and saying Miller you should do what we're doing you should put a label on your beer because people want to know what is in their beer. So in light of all that Judge Conley made the determination that the packaging is comparative and I think judged under the clear air standard that clearly has to be affirmed. Next I'd like to move to the question that Judge Easterbrook raised about mootness. We do not believe this case is moot. While it may be the case that Anheuser-Busch has no longer been running the ads that they have not been enjoying from running they've never said they will that they don't intend to run those ads and they've never said they don't intend to run the ads that have been enjoined if that injunction in fact were lifted. And I think with respect to the ads that weren't enjoined there's a reason for that. Again this campaign was sort of a three-stage attack. Stage one is talking about consumers ought to know what is in their beer and emphasizing the in the beer. Stage two were the Super Bowl commercials talking about Miller Light is made with corn syrup Coors Light is brewed with corn syrup and then stage three is the follow-up with packaging billboards print ads TV ads there's no corn syrup in our beer here's our label no corn syrup in our beer. And so in light of that I don't see where there's anything moot at all about the current situation. I think the reason they're not running those middle ads is because they lose a great deal of their effectiveness when they are not paired with the conclusory ads of the campaign the ads that talk about no corn syrup in our beer. The next point I'd like to address and Mr. Schott before you do that this is Judge Sidibe I want to go back to the scope of what the court should look at in determining this. You've mentioned and the district court relied on the full ad campaign. How can the scope of a false statement in an advertisement be looked at in terms of an entire campaign without some evidence that the purchaser who goes and looks at this packaging actually has seen the full advertisement? So the focus here just to clarify the focus here is on the packaging itself but the district court in its decision looked beyond just the packaging the court looked at and relied on the full campaign without some evidence that those who go and buy the beer in this packaging actually have seen the full campaign. How can you that be the relative comparison? Well first to be clear what the district court did was look to these other contexts to determine whether or not the packaging was comparative. He found the statement to be misleading just as he did with respect to the same statements in billboards and print ads and other things in his May 24th order. He found the statements to be misleading not by looking at the context of other ads. In fact that's one of the issues that we we raised in our first appeal is that he felt like he couldn't look at the other ads in determining the misleading nature of the made with brewed with statements when we think he should but he did not look to those other ads here with respect to determining the the packaging was misleading. He looked to the context of the entire campaign to determine the comparative nature of it and I think that just simply makes great sense if this is probably not a perfect example but if the two days before an election where there are two candidates candidate A runs an ad that says you should vote for me because I pay my taxes that's a comparative ad because it's clearly a reference to party B the the other candidate and I think here given the limited scope of the market it's appropriate to say a reference such as the no corn syrup on the packaging is in fact comparative of the only other competitors that are in the market. But the court specifically said viewed in the context of the full advertising campaign a reasonable jury could find that the implicit message of the packaging is that other beers contained corn syrup and the court made that determination in analyzing the falsity or misleading nature of the statement. And at trial we will certainly have to show and Anheuser-Busch will be welcome to try to disprove that people saw the other advertisements but that's kind of my point doesn't the district court if you're making a determination of likelihood of success on the merits and you're assessing whether or not the statement at issue in the ad is misleading doesn't the court have to to make that determination or have some evidence if it's analyzing misleading based on the full campaign that purchasers actually saw the full campaign? You seem to have implicitly conceded that if you say you have to prove it at trial. And the evidence was this was an integrated campaign that it was deliberately designed to have consumers hear the messages from all these different sources and have the packaging be a follow-up to the ads that were run at the Super Bowl. I mean this was all staged to run in a process and so at least at the preliminary injunction stage I think that's sufficient evidence for the district court to rely on in determining that in fact the the nature of the ads were misleading in this way. Was there any specific evidence that those who go and purchase the beer in that packaging saw this bigger campaign of advertisements? I'm hesitating only because I know there is such evidence but I don't know whether or not it was before Judge Conley at the time of the packaging injunction but I know that in some of the surveys that were taken in fact I it was in the wind survey that was taken where there were a number of respondents that were asked the question did they see other ads wasn't with respect to packaging but did they see other ads and and there was that evidence in front of Judge Conley that a number of the respondents to the survey had seen other ads. Mr. Schott, Mrs. Hamilton, can I ask you perhaps a more fundamental question that troubles me about the theory here and it's one that I raised with you when we were together face-to-face back in September and that is how we can treat as a Lanham Act violation a reference to corn syrup as an ingredient in plaintiff's products when plaintiffs have identified themselves corn syrup as an ingredient in their products. Along those lines as near as I can tell that's an unprecedented theory under the Lanham Act and your brief attempt to distinguish the first health opinion from our court by trying to distinguish between government language and the plaintiff's own language is I have to say not I'm not convinced yet. The statements that we seek to enjoin here are statements that imply that there is corn syrup in the final product and the word ingredient can mean it's in the final product but it could also mean it's not in the final product and the context in which we use that on our website we do not believe gives anybody the misleading impression that there is corn syrup in the final product. Mr. Schott, I'm having something of the same problem. It's the can and the bottle says that it contains corn syrup. It's listed as third on the list which under regulations has to be in order of quantity. How is it possible to say that something that contains corn syrup does not contain corn syrup? I'm sorry your honor but I do not believe that our website uses the word contain. I didn't mention your website. I mentioned the bottle and can and the packaging materials. Our packaging materials and our bottles and cans again do not list corn syrup or use the word contain. In fact that's one of the things that Anheuser-Busch has been not done that and we don't have anything that I'm aware of that says our beer contains corn syrup. We list it as an ingredient on our website and so to go back to Judge Hamilton's question that's what I think is misleading here is the inference, the implication from the context in which they make their statements and they do occasionally use the word ingredient but most of their statements are not using the word ingredient. Most of their statements are the made with, uses, brewed with, 100 percent less corn syrup, all of which imply that there is corn syrup in the final product and part of the evidence that was before Judge Conley was that even though we have this language on our website before those Super Bowl ads we didn't receive any complaints from customers indicating that they felt, I'm sorry I thought I heard a voice, okay, we didn't before the Super Bowl ads we didn't hear any evidence or any complaints from the consumers. As soon as the Super Bowl ads ran we received a number of complaints. I think it was approximately 200 complaints from consumers complaining about corn syrup in their beer which is evidence that the context makes a difference. People didn't misunderstand or didn't take the wrong impression or didn't get the impression from our website that there was corn syrup in the final product but they got that impression from the Anheuser-Busch ads because that's what Anheuser-Busch intended as we demonstrated I think pretty thoroughly in our submissions back in March and April where we quoted extensively from the interviews that their vice president in charge of Bud Light gave immediately after the Super Bowl talking about how they did consumer surveys that showed people were concerned about what they obviously you don't consume corn syrup when you drink Miller Light or Bud Light because it is not in the final product. I'm sorry Judge Hamilton did that respond to your question? That's the response okay. All right I also would like to turn to the question of the irreparable harm issue and make two points there. First of all we did insert evidence of irreparable harm here so we're not relying merely on the presumption. What was that evidence? That evidence was for example the consumer complaints that I referred to a moment ago people complaining about our product because they felt there was corn syrup in it. We did we put in evidence of a social media study that was done by Professor Wind where he examined the social media communications that occurred post Super Bowl and the number of times that people made comments about corn syrup in our beer. But did any of that evidence was any of that linked to the packaging as opposed to the Super Bowl commercial? No it wasn't. It was it was linked to the message and I'm glad you asked that question because it brings me to the final point I wanted to make. I think what Anheuser-Busch's argument boils down to is if if they run an integrated campaign with the message that there is corn syrup in Miller Light and Coors Light and in that campaign they use billboards and TV ads and print ads and radio ads and point-of-sale displays and packaging we have to have a survey or evidence with respect to each one of those media as opposed to an evidence about the message. And I just don't think that makes any sense. I don't think there's any case law that supports that. The case law talks about the statements and what Judge Conley did is enjoin statements. He didn't enjoin statements on certain types of media and not on other types of media. He enjoined the statements and so I think it would be a mistake for this court to decide that we would have to have evidence with respect to every different kind of advertising media in which the same statements were made in order to enjoin those statements with respect to that media. If I may, I know I'm getting close to the end of my time, I'd like to turn briefly to the irreparable harm issue. As I mentioned before we do have evidence of irreparable harm but I think there is a very good reason to distinguish trademark and Lanham Act cases from patent cases and copyright cases where the presumption post-eBay has been abolished. And the reason is if someone infringes my patent and basically sells my product under their name I will have lost sales but that is exactly the kind of thing that is typically compensated by money damages. There's no reason to presume that I've suffered some irreparable harm. The harm I have suffered is harm that can be recovered through money damages. If somebody lies about my product, goes out and says things in the public that are untrue about my product, that creates exactly the kind of reputational harm that the Lanham Act is designed to protect and that is traditionally associated with irreparable harm. So I do think that there is a strong reason for distinguishing eBay and not applying it to trademark cases because there is a reason to presume irreparable harm in those types of cases. There may not be such a patent case. But in patent cases you often have the same argument that if a company or somebody takes a patent and then goes out and produces that product that there is irreparable harm to the reputation of the patent holder because whatever that end product is, isn't the same quality. And if somebody wants to make that argument they can and I think the teaching of they're not entitled to presumption. They're going to have to prove that the product was inferior and in fact it had this reputational damage. But why would that differ from the Lanham Act? Something untrue about my product I think does give rise to that presumption. Why would that differ from the Lanham Act context? Because in the patent context they're making that same reputational argument. Because not every patent case is a case where you can make that argument. Somebody may infringe your patent but they may be making a very high quality product. They may make it exactly the way I was making it. And so I don't have that argument. There's no reason to presume that I have that argument. So you think every Lanham Act case is about reputation as opposed to the monetary damages? Well if you're saying something false about my product it's because certainly yes much more likely that it's about reputational damage if you're saying something false about my product than simply if you're making my product using my patent. Again we're talking about a presumption so who should have the burden of proof on something? It's not conclusive but there is a reason to presume reputational damage in trademark cases that I don't think exists in patent cases. According to my notes I believe my time has expired. I'm certainly happy to answer any further questions the panel may have. Hearing none thank you very much Mr. Schott. Anything further Mr. Bennett? Just briefly your honor to respond to Judge Hamilton's observations about First Health which I know that Judge Easterbrook actually wrote. In addition to the observation and became basis of the holding that for many years people in the business have been describing PPO in the same way and so we have both industry and government. I don't think that case is distinguishable in any meaningful way. In addition here there is no evidence at all that shows any tie to go to Judge St. Ede's questions between true Super Bowl commercials and this packaging. The packaging is key different in a key way which is it makes no express comparative claim. Everything else that was being compared to in the other injunction in May was a comparative matter. If they wanted to enjoin this they had time and no doubt looked at our survey and thought about doing one and for some reason didn't do one and I don't think that under J&J vision in particular that that carries today. On the issue of injury Judge Easterbrook I think your decision in B. Sanfield is a Lanham Act case, does hold they have to prove injury, does say that they have to that's an element. I think the same logic would apply to irreparable harm post eBay and to further respond to Joe Tamplin's question from earlier we do think we presented evidence of no actual harm even if there's a presumption. So thank you very much your honors we appreciate it. Thank you counsel the case is taken under advisement and the court